**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Quema HOLLOWAY (83–1490), Eddy
Roger Connor (83–1500),
Defendants-Appellants.**

**Nos. 83–1490, 83–1500.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 18, 1984.

Decided April 13, 1984.

Opinion on Remand Aug. 2, 1984.

Kenneth T. Saukas, argued, Grand Rapids, Mich., for Holloway.

John A. Smietanka, U.S. Atty., Jeanine Nemesi LaVille, argued, Grand Rapids, Mich., for U.S.

James L. Koetje, argued, Grand Rapids, Mich., for Connor.

Before ENGEL, MARTIN and CONTIE, Circuit Judges.

PER CURIAM.

Defendant Eddy Roger Connor appeals his conviction on one count and defendant Quema Holloway appeals her conviction on two counts of making and presenting fraudulent tax refund checks to the Department of the Treasury in violation of 18 U.S.C. § 287. We affirm the conviction of Eddy Roger Connor and remand Quema Holloway's case to the district court for further proceedings.

It is undisputed that various inmates of the Florida State Prison filed or caused to be filed false federal income tax returns which indicated their entitlement to refunds. These tax returns provided that the refunds were to be sent to persons outside of the prison, who would later negotiate the refund checks and distribute the proceeds. It is also undisputed that the IRS sent some of these checks to Quema Holloway who, pursuant to the requests of vari-

ous inmates, negotiated the checks and distributed the proceeds for a commission in accordance with each prisoner's instructions.

The record indicates that a 1979 income tax return and supporting W–2 forms were filed in the name of Eddy R. Connor claiming a refund due of $1,953.76. The address listed on the return was "c/o Marlette, Rte. # 2, Blanchard, Michigan 49310." The refund check was mailed to that address and cashed by Quema Holloway at the Blanchard State Bank. The following year, a 1980 income tax return and supporting W–2 forms were filed in the name of Charles Daniels claiming a refund due of $1,501.20. That refund check was also cashed by Quema Holloway at the Blanchard State Bank. The record indicates that both Connor and Daniels were inmates at the Florida State Prison. The record also contains a letter, signed "Ed Connor," which was found among Holloway's personal papers. The letter instructed Holloway on how to distribute the $1,953.76 refund check.

Charles Daniel testified at trial that he was asked by another inmate to participate in a scheme to collect money from the Internal Revenue Service. When Daniel agreed, he was told to obtain an outside address to which a check could be sent. Daniel then approached yet another inmate, Mickey Scarborough, and asked him to provide an outside address. Scarborough gave Holloway's address to Daniel and made other statements to the effect that Holloway was a knowing participant in the refund check scheme.

Defendant Holloway testified at trial that she had cashed checks for Connor and Daniels, but that she had no knowledge that she was participating in a scheme to defraud the government. On cross-examination, she stated that she knew the prisoners were not entitled to receive tax refunds, but said she did not know the checks she cashed were tax refunds. Defendant Connor did not testify. Following trial, Defendant Connor was convicted on one count and Defendant Holloway was convicted on two counts of presenting fraudulent tax returns to the Department of the Treasury. 18 U.S.C. § 287. Both defendants appeal.

## EDDY ROGER CONNOR

Connor initially contends that he was denied a fair trial when the court permitted the government's handwriting expert to authenticate the letter in which Connor instructs Holloway on how to distribute the proceeds of the $1,953.76 refund check. Connor argues that this expert testimony was admitted in violation of a pretrial order which states that no scientific tests would be employed by the government. Connor further contends that he was prejudiced by this surprise testimony because he did not have the opportunity to obtain an expert witness to rebut the government's witness.

This argument is meritless. While the Pretrial Conference Summary Order does provide that "[t]here are not any scientific tests," it also states that *"[a]ny test results found will be provided defense"* (emphasis added). This order, filed one and one-half months prior to trial, should have put the defense on notice that the government retained the option of performing scientific tests at a later date. Moreover, when the government's attorney informed defense counsel one week prior to trial that it planned to use an expert witness, defense counsel failed to ask for a continuance in order to obtain his own expert witness. Under these circumstances, we find no error in the admission of the government expert's testimony. *See United States v. Russo*, 480 F.2d 1228, 1243 (6th Cir.1973), *cert. denied* 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974).

Connor also objects to the jury instruction that the knowledge of falsehood element in 18 U.S.C. § 287 may be inferred from "proof that the defendant deliberately closed his eyes or her eyes to what would otherwise have been obvious to him or her." While the defendant maintains that the knowledge element may be satisfied only upon a showing that the defendant

had "a certain and clear perception of the falsity of the claim made," this circuit has repeatedly upheld the district court's knowledge instruction on the basis that it prevents a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct. *See United States v. Gullett,* 713 F.2d 1203, 1212 (6th Cir.1983); *United States v. Seelig,* 622 F.2d 207, 213 (6th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); Accordingly, we hold that the instruction on deliberate ignorance was not erroneous.

■ Connor's final argument is that the district court erred in denying his motion for judgment of acquittal. *Fed.R.Crim.P.* 29(c). In deciding whether evidence is sufficient to withstand a motion for an acquittal, we must view the evidence and all reasonable inferences in the light most favorable to the government. *United States v. S. & Vee Cartage Co.,* 704 F.2d 914, 921 (6th Cir.1983). If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the denial of defendant's motion for acquittal must be affirmed. *Id.*

■ While Connor argues that the evidence did not establish that he knew the refund claim was false, the record indicates otherwise. The government proved that an income tax return was filed in the name of Eddy R. Connor, a prison inmate, which indicated that a refund was due in the amount of $1,953.76. Thereafter, the $1,953.76 refund check was cashed by Quema Holloway and distributed according to a letter sent by "Ed Connor" to Holloway. When questioned by an FBI agent about this offense, however, Connor denied that he knew Quema Holloway or that he had corresponded with her by mail. In addition, Connor's mother testified that she received a letter from her son which informed her that she would receive part of the proceeds from the refund check and instructed her what to do when she got it. Viewed in the light most favorable to the government, we hold that this evidence would permit a reasonable mind to fairly

find beyond a reasonable doubt that Connor knew the tax refund claim was false.

## QUEMA HOLLOWAY

■ Holloway first contends that the district court improperly admitted the hearsay testimony of Charles Daniel under the co-conspirator exception to the hearsay rule, *Fed.R.Ev.* 801(d)(2)(E). As noted earlier, Daniel testified that another inmate, Mickey Scarborough, gave Holloway's address to Daniel and made other statements to the effect that Holloway was a knowing participant in the refund check scheme. This hearsay testimony is significant because it contradicts Holloway's assertion that she had no knowledge that she was participating in a scheme to defraud the government.

This circuit has indicated that the government may admit hearsay evidence pursuant to Rule 801(d)(2)(E) only upon a showing by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant against whom the hearsay is offered is a member of the conspiracy, and (3) the hearsay statement was made in the course and in furtherance of the conspiracy. *United States v. Enright,* 579 F.2d 980, 986 (6th Cir.1978). Moreover, this preliminary finding is the sole province of the trial judge. *Id.* at 987. In *United States v. Vinson,* 606 F.2d 149 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980) this court set forth three alternative methods for district judges to make the preliminary *Enright* finding. The first option is the so-called "mini-hearing" in which the court, without a jury, hears the government's proof of conspiracy and makes the *Enright* finding. *Id.* 606 F.2d at 152. The judge may also require the government to meet its burden by producing the non-hearsay evidence of conspiracy prior to making the *Enright* finding concerning the hearsay's admissibility. *Id.* Finally, the judge may admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence. *Id.* 606 F.2d at 153. If this third option is fol-

lowed, the court should stress to counsel that the statements are admitted subject to defendant's continuing objection and that the prosecutor will have to show by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the statements are hearsay was a participant and that the statement was made in the course and in furtherance of the conspiracy. *Id.* At the conclusion of the government's case-in-chief, the court should rule on the defendant's hearsay objection. *Id.*

■ In this case, the record indicates that defense counsel objected to the admission of Daniel's hearsay testimony and that the government's attorney responded that this testimony would be admissible under Rule 801(d)(2)(E). The court, however, never made a ruling on the preliminary question of admissibility as required by *Enright* and *Vincent.* While we do not feel that we are foreclosed from reviewing the record ourselves to determine whether (1) Holloway was a member of a conspiracy when the hearsay statements were made, and (2) the statements were made in the course and in furtherance of the conspiracy, we believe the proper approach is to remand the case to the district court to make the appropriate *Enright* finding. We also retain jurisdiction of this case so that we may immediately review the trial judge's *Enright* finding as well as defendant Holloway's other assignments of error. Accordingly, the judgment of the district court in case number 83–1500 is AFFIRMED. We also retain jurisdiction in case number 83–1490 and REMAND it to the district court for further proceedings in accordance with this opinion.