**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Tracy DYMOWSKI, Defendant and Appellant.**

**Cr. No. 890360.**

Supreme Court of North Dakota.

July 31, 1990.

Gordon A. Dexheimer (argued), Grand Forks, for defendant and appellant.

Thomas H. Falck, Jr. (argued), Asst. State's Atty., Grand Forks, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Tracy Dymowski appeals from a jury verdict in the District Court for Grand Forks County finding her guilty of possession of a controlled substance. We affirm.

On July 17, 1989, the residence of Tracy and her husband, Wayne Dymowski, at 1101 2nd Avenue North in Grand Forks, North Dakota, was searched by law enforcement authorities pursuant to a search warrant. The search uncovered seven packets, each containing .02 grams of heroin, a syringe containing traces of heroin, and various items recognized by a United States Customs Agent as drug paraphernalia. The items were found in a dresser drawer which also contained women's undergarments. The bedroom in which the dresser was located contained evidence of both male and female occupants. Tracy and Wayne were charged with possession of heroin, a Class C Felony in violation of sections 19–03.1–05(4)(k), 19–03.1–23(3), and 12.1–32–01(4) of the North Dakota Century Code. Tracy and Wayne plead not guilty and requested a jury trial. A motion for joinder of Tracy and Wayne to be tried in a joint trial by jury was made by the State and granted by the trial court. Tracy filed a motion resisting the State's motion for joinder, but Wayne did not join in Tracy's motion.

A motion to suppress the evidence found pursuant to the search warrant was made by Wayne and joined by Tracy, alleging lack of probable cause to issue a search warrant, prejudice and irrelevance. The trial court granted suppression of certain items of evidence, based upon lack of relevance, but denied that part of the motion which was based on the allegations of lack of probable cause to justify the search warrant and on the arguments that certain evidence was unduly prejudicial. On October 18, 1989, Tracy was convicted by a jury of 12 of possession of heroin and sentenced on November 20, 1989, to 48 months in the North Dakota State Penitentiary, with 30 months suspended for a period of three years subject to supervised probation. On appeal, Tracy raises the following issues:

"Whether the district court erred by denying a motion to suppress evidence obtained pursuant to a search warrant issued on information which Appellant contends was not sufficient to constitute probable cause."

"Whether the district court erred by denying Appellant's motion for relief from prejudicial joinder, and in sustaining objection by counsel for Appellant's husband to introduction of evidence in defense of Appellant at trial."

MOTION TO SUPPRESS

Tracy and Wayne brought separate appeals to this Court from their convictions in this case. In *State v. Wayne Dymowski*, 458 N.W.2d 490 (N.D.1990), we addressed the issue of whether or not there was sufficient evidence presented to the magistrate to establish probable cause for the issuance of the search warrant for the house occupied by Tracy and Wayne Dymowski. We concluded that the search warrant was properly issued and that the evidence thus was properly admitted. As the facts and circumstances relative to this issue are identical in the two appeals, we conclude here, also, that there was sufficient evidence presented to the magistrate to establish probable cause for the issuance of a search warrant and that, therefore, the evi-

dence found pursuant to the search warrant was properly admitted against Tracy.[1]

## PREJUDICIAL JOINDER

Tracy contends that the trial court's denial of her motion for relief from prejudicial joinder denied her the right to a fair trial. Tracy asserts that the prejudice became evident at the joint trial when objection was made by counsel for Wayne to certain questions asked by Tracy's counsel of a witness of the State. The objection was sustained and the testimony was not allowed. Tracy contends that the testimony was crucial to her defense and that if a separate trial had been granted, the testimony would have been allowed.

The trial court consolidated the trials of Tracy and Wayne into one joint trial in accordance with Rules 8 and 13 of the North Dakota Rules of Criminal Procedure.[2] *See State v. Heart*, 334 N.W.2d 479, 482 (N.D.1983) (Rule 13, N.D.R.Crim.P., gives the trial court the discretion to join two defendants). Rule 14, N.D.R.Crim.P., provides for relief from prejudicial joinder as follows, in pertinent part:

"If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires."

▮▮▮▮ The purpose of Rule 14 is to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of defendants to a fair

trial. *State v. Lind*, 322 N.W.2d 826, 831 (N.D.1982). The defendant bears the difficult burden of demonstrating that she has been prejudiced by joinder. She must show something more than the mere fact that a separate trial would have afforded a better chance of acquittal. Joinder must be shown to have rendered the trial unfair. *State v. Boushee*, 284 N.W.2d 423, 427–28 (N.D.1979). A joint defendant in a criminal action is not entitled to a separate trial as a matter of right. *State v. Whiteman*, 79 N.W.2d 528, 533 (N.D.1956). We will not set aside a trial court's refusal to grant a separate trial unless it is shown that there has been a clear abuse of discretion. *Lind, supra* at 831; *State v. Erickson*, 231 N.W.2d 758, 763 (N.D.1975).

In *State v. Erickson, supra*, Erickson appealed his burglary conviction claiming, among other things, that the trial court erred in failing to grant his motion to sever his trial from another defendant. In affirming the conviction, we said:

"At the time Erickson made his motion for severance, he made no showing that he would be prejudiced by a joint trial and he made no affirmative showing that his codefendant, JoAnn Bickel, would testify on his behalf at a separate trial.

\* \* \* \* \* \*

"In the absence of a showing of prejudice and in the absence of a showing that Erickson's codefendant would testify for him in a separate trial, it cannot be said that the trial court abused its discretion in denying Erickson's motion for a severance."

*Erickson* at 763.

▮▮▮▮ Tracy claims, in essence, a retroactive prejudicial misjoinder entitling her to

---

**1.** For a complete discussion of the issue of whether or not there was sufficient evidence presented to the magistrate to establish probable cause for the issuance of the search warrant in this case, see *State v. Wayne Dymowski*, 458 N.W.2d 490.

**2.** The text of Rule 8(b), N.D.R.Crim.P., reads:

"*(b) Joinder of Defendants.* Two or more defendants may be charged in the same indictment, information, or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts

or transactions constituting one or more offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

The text of Rule 13, N.D.R.Crim.P., reads:

"The court may order two or more indictments, informations, or complaints to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment, information, or complaint. The procedure shall be the same as if the prosecution were under a single indictment, information, or complaint."

relief because of the development which occurred during the trial and taking into consideration her pretrial motion for relief from prejudicial joinder. The incident which Tracy claims resulted in prejudice occurred during the jury trial while her attorney was cross-examining Agent Thomas Dahl of the North Dakota Bureau of Criminal Investigation. Agent Dahl had submitted one of the affidavits in application for the search warrant of the Dymowski residence and had provided certain background information on Wayne relative to a previous drug-related investigation. The alleged prejudicial incident occurred as follows:

"Q  You executed an affidavit to support the search warrant, did you not?

"A  Yes, I did.

"Q  Do you recall your statement regarding both Gary and Wayne Dymowski in that affidavit?

"A  If I might take a moment to find it and look at it. Yes, I stated in the affidavit that we had intelligence both on Gary and Wayne, prior intelligence—

"MR. WOOD [counsel for Wayne]: Your Honor, may we approach the bench, please.

"THE COURT: Sure.

"(Whereupon an off-the-record discussion was had at the bench out of the hearing of the Jury.)

"THE COURT: Could the court reporter please read back the last question please. (Record read.)

"Counsel wish to make an objection?

"MR. WOODS: Yes, Your Honor. On two grounds, relevance and hearsay.

"THE COURT: With regard to Wayne and Gary Dymowski?

"MR. WOODS: Yeah.

"THE COURT: Mr. Dexheimer.

"MR. DEXHEIMER [counsel for Tracy]: I consider it relevant, Your Honor.

It was statement made in an affidavit in support of the search warrant basis of which we're here today.

"THE COURT: I will sustain the objection. You may continue."

The testimony was not pursued any further. Tracy contends that the testimony being sought by her counsel was "crucial" to her defense and would have been allowed had there been separate trials. However, Tracy has failed to indicate to this Court what that testimony entailed and how it was "crucial" to her defense. Tracy's counsel made no objection or argument on the record in support of why the testimony was crucial. Tracy's counsel also failed to renew the motion for severance at the time of the alleged prejudice or at the close of the evidence. We have found no indication in the record of an offer of proof to show the content of the testimony being sought. We have often stated that a failure to object at the time an alleged irregularity occurs acts as a waiver of the claim of error. *Anderson v. Otis Elevator Co.,* 453 N.W.2d 798, 801 (N.D.1990); *Andrews v. O'Hearn,* 387 N.W.2d 716, 730 (N.D. 1986). The failure to object operates as a waiver of the issue on appeal, but the error may provide a basis for reversal if it constitutes obvious error affecting substantial rights of the defendant. *State v. Smuda,* 419 N.W.2d 166, 167–68 (N.D.1988). Our power to notice obvious error, however, is exercised cautiously and only in exceptional situations where the defendant has suffered serious injustice. *State v. Hersch,* 445 N.W.2d 626, 634 (N.D.1989).

Tracy's failure to make an offer of proof makes it very difficult for this Court to assess whether or not an error has occurred. Rule 103, N.D.R.Ev.[3] We have often pointed out that this Court will not review claimed errors where there is no record and no offer of proof by which the

---

**3.** The text of Rule 103(a), N.D.R.Ev., reads:

"(a) *Effect of Erroneous Ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the

specific ground of objection, if the specific ground was not apparent from the context; or

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

claim of error can be properly evaluated. *Matter of Estate of Kjorvestad,* 375 N.W.2d 160, 167 (N.D.1985); *See State v. Lang,* 378 N.W.2d 205 (N.D.1985) (appellant was not unlawfully precluded from presenting competent evidence to establish justification for conduct where he failed to present evidence and made no offer of proof to substantiate such a position); *State v. Flohr,* 301 N.W.2d 367 (N.D.1981) (whether or not trial court suspects the proof to be offered is ultimately inadmissible, a record preserving the offer and the ruling is necessary if an appellate court is to carry out its reviewing function). However, review is possible if the substance of the evidence is apparent from the context within which the questions were asked. Rule 103(a)(2), N.D.R.Ev; *See also United States v. Winkle,* 587 F.2d 705 (5th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979) (error may not be based on a ruling excluding evidence unless the substance of the evidence was made known to the court by an offer of proof or was apparent from the context within which the questions were asked).

In Agent Dahl's affidavit to the magistrate in support of the application for the search warrant, he included the following information relative to prior intelligence on Wayne:

"IV.

"Your Affiant has previously had contact with Wayne Dymowski during an investigation by the North Dakota Attorney General's Drug Enforcement Unit in the Grafton, North Dakota area. Mr. Dymowski was charged with Possession with the Intent to Deliver approximately nine pounds of marijuana. That case is presently pending in Walsh County, North Dakota. Your Affiant believes that the individual at 1101 2nd Avenue North is the same Wayne Dymowski involved in the Walsh County case.

\* \* \* \* \* \*

"VI.

"Your Affiant advises that the North Dakota Attorney General's Drug Enforcement Unit has had intelligence and information from confidential informants previously indicating that Gary Dymowski [Wayne's brother] and Wayne Dymowski, both have been involved in the trafficking of controlled substances within the State and in East Grand Forks, Minnesota."

From the context of the questions previously cited in this opinion, it seems obvious that Tracy's counsel was attempting to question Agent Dahl relative to his knowledge of Wayne's prior drug-related experiences.

■ Under Rule 14, N.D.R.Crim.P., the duty of the trial court to grant a severance is a continuing one which must be exercised in light of developments during the trial. Explanatory Note, Rule 14, N.D.R.Cr.P. In *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), the United States Supreme Court noted that in a severance situation controlled by Rule 14 of the Federal Rules of Criminal Procedure, the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear. The issue in *Schaffer* was whether or not, in a joint trial against two defendants, after dismissal of a conspiracy count before submission of the cases to the jury, a severance should have been ordered under Rule 14, F.R.Cr.P. Notwithstanding the trial court's duty to guard against prejudice which arises during the trial, the Supreme Court held:

"However, the petitioners here not only failed to show any prejudice that would call Rule 14 into operation but even failed to request a new trial. Instead they relied entirely on their motions for acquittal. Moreover, the judge was acutely aware of the possibility of prejudice and was strict in his charge—not only as to the testimony the jury was not to consider, but also as to that evidence which was available in the consideration of the guilt of each petitioner separately under the respective substantive counts. The terms of Rule 8(b) having been met and no prejudice under Rule 14 having been shown, there was no misjoinder."

*Schaffer,* 80 S.Ct. at 948. Similarly, in the case at hand, the trial court instructed the jury as to the testimony it was and was not to consider and that each defendant was to have the case decided on the evidence which applies to that particular defendant.

The Fifth Circuit has adopted the continuing duty rule and has said that the failure to move for severance before trial is not fatal to a severance claim. *United States v. Berkowitz,* 662 F.2d 1127, 1133 (5th Cir.1981). However, in *Berkowitz,* the Fifth Circuit noted that although none of the appellants had made a pretrial motion for severance, numerous motions for severance were made throughout the trial, and held:

> "Defendants Vafaie and Van Coughnett, thus, did present to some extent antagonistic defenses and each probably suffered some prejudice from being tried with the other. But a mere showing of some antagonism and prejudice is insufficient to require overturning a denial of severance by the district court. In this circuit, to compel severance the defenses must be more than merely antagonistic—they must be antagonistic to the point of being mutually exclusive or irreconcilable. [Citations omitted.]
>
> \*   \*   \*   \*   \*   \*
>
> "[W]e hold that the essence or core of each defendant's defense—noninvolvement in the criminal activity—was not in conflict, and indeed could be construed to be quite consistent, *i.e.,* neither were criminally involved.... In sum, we cannot say that the joint trial of defendants Vafaie and Van Coughnett denied either a fair trial."

*Berkowitz* at 1133–35. In *Berkowitz,* each of the defendants testified, supporting as the Court said antagonistic defenses, and still that did not justify a new trial on the grounds of prejudicial joinder. In the instant case, neither defendant testified and thus, as far as the record discloses, had any antagonistic defenses that were jeopardized by the joint trial. We cannot determine from oral arguments, either in opening or closing [4] statements, that the defendants were contemplating initially or that they carried out defenses that were antagonistic.

Other jurisdictions have also adopted the view that a motion for severance is not absolutely necessary to preserve the issue. In *United States v. De Diego,* 511 F.2d 818 (D.C.Cir.1975), nine individuals were indicted on a conspiracy charge. The United States District Court for the District of Columbia dismissed the indictment as to De Diego because he had previously testified under a grant of immunity about his involvement in the alleged conspiracy, and this testimony had come into the hands of the government. The District of Columbia Circuit Court of Appeals reversed and remanded the dismissal to give the government an opportunity to prove lack of taint. Without specifically ruling on the severance issue, the District of Columbia Court of Appeals also said:

> "A further option open to the trial court here was, of course, severance. De Diego himself had previously moved for severance. But even in the absence of such a request by either party, the court had the power, in the interest of justice, to grant a Rule 14 severance *sua sponte.*"

*De Diego* at 824. In *United States v. Gougis,* 374 F.2d 758 (7th Cir.1967), three defendants were tried together on charges contained in a five-count indictment having to do with the possession and sale of narcotics. Two of the defendants, Gougis and Phillips were represented by the same counsel. Phillips and the third defendant, Burke, testified, while Gougis did not. Gougis claimed on appeal that the joinder was prejudicial due to the testimony of Phillips which significantly implicated Gougis. The Seventh Circuit held that Gougis was denied his right to the effective assistance of counsel and granted him a new trial. In addressing the government's contention that Gougis waived the joinder issue by failing to object to it before or during the trial, the Seventh Circuit said:

---

**4.** The closing statement was apparently not transcribed and thus was not included in the transcript or record supplied to this Court on appeal.

"An important feature here is that Gougis' counsel may well have felt limited and restricted in the trial strategy that she should or could adopt, and therefore did not object to the misjoinder.

"Rule 14 F.R.Cr.P. does not specifically require a motion for severance for it states—'If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.' The wording of the Rule would indicate a continuing duty during the trial on the part of the court to avoid prejudice as a result of a joinder.

\*    \*    \*    \*    \*    \*

"We hold that under the facts of this case, Rule 12(b)(2) F.R.Cr.P. is not a bar to our ruling that a misjoinder as to defendant Gougis existed. We do so rule."

*Gougis* at 762. The instant case is clearly distinguishable from *Gougis* in that the codefendant Wayne did not attempt to implicate defendant Tracy and they were not represented by the same attorney.

Other jurisdictions have held that the failure to make and/or renew a Rule 14 motion after the close of all the evidence results in a failure to preserve the issue for appeal. In *United States v. Swift*, 809 F.2d 320 (6th Cir.1987), nine defendants were jointly tried on a number of charges involving drug violations, racketeering, tax evasion, and false declarations to a grand jury. A motion for severance was made on the grounds of prejudice from financial evidence that was being introduced against some of the defendants. The Sixth Circuit said:

"As noted above, this severance motion was made during trial but not renewed at the close of the evidence. Other circuits have required that a motion to sever be renewed at the close of evidence for the objection to survive. *See, e.g., United States v. Guess*, 745 F.2d 1286, 1289 (9th Cir.1984), *cert. denied*, 469 U.S.

1225, 105 S.Ct. 1219, 84 L.Ed.2d 360 (1985); *United States v. Mansaw*, 714 F.2d 785, 790 (8th Cir.), *cert. denied*, 464 U.S. 964, 104 S.Ct. 403 78 L.Ed.2d 343 (1983). As a prospective ruling affecting cases tried after January 1, 1987, we hold that a severance motion will be deemed waived if it is not renewed at the end of the evidence. This ruling does not affect this case, however, because the district court effectively reconsidered the motion at the end of the case and found severance still inappropriate."

*Swift* at 323. In *United States v. Loya*, 807 F.2d 1483 (9th Cir.1987), five defendants were jointly convicted of conspiracy to smuggle, transport, and harbor illegal aliens. The appellants claimed that the district court abused its discretion in denying their motion for severance. In affirming the convictions, the Ninth Circuit said:

"Appellants made a pretrial motion for a separate trial under Rule 8 and Rule 14 of the Federal Rules of Criminal Procedure. 'In this circuit, to preserve the issue on appeal, a motion to sever must be renewed at the close of the evidence or it is waived.' *United States v. Burgess*, 791 F.2d 676, 678 (9th Cir.1986).

"The motion was not renewed at the close of evidence. We decline to review this issue because it was not preserved on appeal."

*Loya* at 1494. In *United States v. Lanese*, 890 F.2d 1284 (2nd Cir.1989), defendants Lanese and Romano were jointly convicted of using extortionate means to collect extensions of credit. Before trial, Lanese moved for a severance, but did not renew the motion at any point during trial. In affirming the convictions, the Second Circuit said:

"In some circuits, failure to renew a Rule 14 motion after the close of all the evidence would result in a failure to preserve the issue for appeal. In this circuit, 'failure to pursue vigorously the severance issue below increases our reluctance to second-guess the trial court's decision.'

"On appeal, a trial court's denial of a Rule 14 motion to sever is 'virtually unre-

viewable.' To prevail, 'the defendant must show that he or she suffered prejudice so substantial as to amount to a miscarriage of justice.'

"Lanese has failed to show that his joint trial with Romano and Iannucci was 'a miscarriage of justice.'" [Citations omitted.]

*Lanese* at 1289–90.

In *United States v. Mansaw,* 714 F.2d 785 (8th Cir.) *cert. denied,* 464 U.S. 964, 104 S.Ct. 403, 78 L.Ed.2d 343 (1983), four defendants were jointly tried before a jury upon a charge of armed bank robbery. All four defendants argued that the trial court had erred in denying their respective motions for severance. Stephen Mansaw argued that his defense was prejudiced by the trial court's limitation of cross-examination of a government witness. The Eighth Circuit held:

"Appellants did not renew their motions for severance at the close of the government's case or at the close of all the evidence. Such failure to renew motions of severance is deemed to be a waiver. In any event, when considered on the merits, appellants did not make the requisite showing of clear prejudice.[5] [Citations omitted.]"

"[5] To establish grounds for reversal, a defendant must show something more than the mere fact that his chances for acquittal would have been better had he [or she] been tried separately. [The defendant] must 'affirmatively demonstrate that the joint trial prejudiced his [or her] right to a fair trial.'

"In applying these general principles, this Court has recognized that the fact that evidence may be admissible as to one defendant but not as to another does not alone require that the defendants be given separate trials. Nor is a defendant entitled to severance simply because the evidence against a codefendant may be more damaging than the evidence against him [or her]. Severance is required only where the proof is such that a jury could not reasonably be expected to compartmentalize the evidence as it relates to separate defendants.

"*United States v. Knife,* 592 F.2d 472, 480 (8th Cir.1979) (citations omitted)."

*Mansaw* at 790–91.

We agree with the view of the jurisdictions which hold that the defendant has a duty to properly preserve a Rule 14 motion for severance by renewing the motion at the appropriate time during the trial or at the close of the evidence. While Tracy did make a pretrial motion for severance in the case at hand, she did not renew her motion when she claims it became obvious that she was prejudiced by the joinder during the trial, or at the close of the evidence. Thus, the issue was not properly preserved for appeal.

In addition, Tracy has failed to make a clear showing of prejudice in this case. While she apparently claims that she and Wayne were pointing the finger at each other and thus trying each other, we note that Tracy did not take the stand and clearly raise such a defense. Also, the basis for error which she claims on appeal, that evidence of Wayne's prior drug involvement was not admitted, is inconsistent with the basis for her pretrial motion for severance, which was that Wayne would be claiming the drugs were Tracy's and thus trying her.

Tracy's argument also seems to imply that she was denied her right of cross-examination secured by the Confrontation Clause of the Sixth Amendment of the United States Constitution. In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court overruled *Delli Paoli v. United States,* 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), which stood for the proposition that it was reasonably possible for a jury to follow sufficiently clear instructions to disregard a confessor's extrajudicial statement that his codefendant participated with him in committing the crime. In *Bruton,* defendants Evans and Bruton were jointly convicted of armed postal robbery. A postal inspector testified that Evans orally confessed to him that Evans and Bruton had committed the armed robbery. In reversing Bruton's conviction, the Supreme Court said:

"We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination se-

cured by the Confrontation Clause of the Sixth Amendment."

*Bruton*, 88 S.Ct. at 1622.

In the case at hand, no prejudicial evidence was received, as was in *Bruton*. Tracy's argument is that prejudicial evidence against Wayne was kept out. But as we have said, she has failed to show how it was prejudicial, failed to object, and failed to renew her motion for severance.

Accordingly, we affirm the judgment of conviction.

GIERKE, J., concurs.

MESCHKE, J., concurs in the result.

VANDE WALLE, Justice, concurring specially.

I concur in the result. Although it appears Tracy was attempting by implication to place responsibility for the heroin on Wayne, I agree that "a mere showing of some antagonism and prejudice is insufficient to require overturning a denial of severance by the district court ... to compel severance the defenses must be more than merely antagonistic—they must be antagonistic to the point of being mutually exclusive or irreconcilable." *United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir. 1981). *Accord United States v. McClure*, 734 F.2d 484, 488 (10th Cir.1984) ["mere *conflicting defenses* do not, standing alone, constitute the showing of prejudice necessary for judicial severance," but *"irreconcilable differences* may require that defendants be tried separately." Record failed to demonstrate even general antagonism toward each of them at trial and sole defense of defendants was not the guilt of the other. Neither defendant's abstract assertions of innocence necessarily tended to prove the other guilty. Either, neither, or both defendants could have logically been convicted or acquitted. Both defendants asserted their innocence and the jury could have logically accepted both theories by laying blame on third person].

I do not join that portion of the opinion which aligns this Court with those jurisdictions which appear to hold that opposition to a severance motion must be renewed at the appropriate time during the trial to preserve the issue for appeal. Notwithstanding that renewal of the objection to severance is the preferable procedure for defense counsel to follow, I would not foreclose consideration of the issue on appeal in every instance in which the objection is not renewed.

LEVINE, J., concurs.